Good morning, Your Honors. James Kienle, I represent the plaintiff appellant Olga Gorbacheva. The district court's opinion in this case after the remand should be overturned for two primary reasons. One, the court applied the wrong standard of review. This case should have been reviewed de novo based on what happened during the remand process. And two, really this only points to one reasonable conclusion. So are you arguing that this court should apply de novo standard of review to the medical evidence? That is an option. That would be our preferred option, would be to resolve this case now. It's been going on for quite some time. And in fact, Ms. Gorbacheva, she's never returned to work and she's now aged out of the plan. We're arguing about a closed period of time. So if we agreed with you that the district court applied the wrong standard in reviewing the plaintiff's determination and decided that the court should have applied de novo review instead of abuse of discretion, why wouldn't we just remand that to the district court to apply what you argue is the correct standard? That is absolutely another option. I think that the court would have the power to do both. And there have been cases over the years where the court has overturned a should be the ultimate outcome in the case. There's many cases where that was not the case, where the standard of review was wrong and the court remanded for the district court to apply it correctly in the first instance. So I think both are options. It's simply a matter of, from our perspective, the amount of time that has already elapsed in the case. So help us out as to why you think this should have been de novo in the district court. Well it should have been de novo principally because of the conflict of interest that was by the direct involvement of litigation counsel in reviewing the evidence and providing the plaintiff's... Now why does that produce conflict of interest? I mean there's always some conflict of interest any time you're dealing with an insurance company. I get that. And involving a lawyer at the stage at which this lawyer appears to have been involved, I don't understand how that increases the conflict of interest. Well this is not just involving any lawyer. This is involving the lawyer who is actively representing the defendants, who are not the plaintiff administrator, in the litigation, which was ongoing. The district court still retained jurisdiction over the case. And that lawyer had a duty to his clients to advocate for their interests, for the defendants' interests in this case. So what you're talking about is essentially the same as a structural conflict. So for the district court to apply de novo review to the administrator's decision, the court would have to conclude that the plaintiff administrator, in fact, did not exercise discretion. And so I understand your argument. You're saying counsel involvement interceded or short-circuited the administrator's exercise of discretion and that in fact it was counsel's decision, not the plaintiff administrator's decision. Is that your argument? That is one of our arguments. Our argument is not that this is the same as a structural conflict of interest. There is the structural conflict of interest. Abbott pays the benefits. Abbott decides who gets them. But this is a much more personal and granular conflict of interest and an actual conflict between the lawyer's legal duty to his client and the fiduciary's legal duty to a plaintiff. So what do you say to address the declaration that the plaintiff administrator submitted that she had already made the decision before she spoke with counsel? Well, I don't think that that is a plausible statement on her part. I mean, you can look at the order of events in which this occurred and that would essentially require her to view thousands of pages of medical records, come to her own conclusions, and then communicated them to the litigation attorney who then wrote them up for her and emailed them back to her. Or to farm that out to a third-party vendor to review the medical records for her and give her a summary or an opinion. And then she reaches a decision. This is a person, though, who in her own declaration said that this was the first ever appeal she'd ever reviewed in this capacity at all. I think the idea that the litigation counsel coming to you and presenting you a fully drafted rationale for your decision, and then you're going to exercise some sort of independent judgment over that, is unrealistic to expect of a fiduciary in that position. But do you really have evidence that that is what occurred in response to the declaration where she says she made the decision, then spoke with counsel? Because the documents can be viewed. There's a reference, certainly, in the email that I'm following up after our conversation. She spoke to counsel, told him her conclusions, he drafted it for her. Would that circumvent her exercise of discretion if counsel drafted it for her? If litigation counsel is drafting it, I do think that's a problem. And I mean, I think the fact that literally no changes were made to that draft once it was in the plan administrator's further evidence. Now, we did ask. But she submitted a declaration that said she personally reviewed the medical evidence, correct? That's what she said, yes. So how can we simply disregard that? Well, for one thing, this is an out of, I mean, this declaration is outside the administrative record in the case. It was produced solely in response to our motion for judgment. And we did ask under Rule 5060 for an opportunity to depose this person. We were not anticipating testimony about what her conduct was in the case. That was denied. But we didn't really get the opportunity to cross-examine these statements. I think the fact that, you know, the bulk of the letter, like, was already drafted. It's the same letter that existed before the first entire round of litigation. The middle section of the letter was drafted by the third party vendor. Then the rationale was drafted by litigation counsel. And it's one thing to have staff help you out with this work. But it's quite another to involve, especially litigation counsel, who has a direct, like, legal conflict of interest in terms of representing his clients and doing the work of a fiduciary. Well, they have, I would think, less of a conflict than the structural conflict that exists when the insurance companies administering the plan. And that they're presumably billing by the hour. They're going to get paid regardless of whether the plan, whatever the determination is. They have no vested interest in that outcome. You're suggesting that as advocates they're going to be so biased in their presentation that they wouldn't even consider that zealous advocacy of their client might include advising the client to find a person disabled. It seems to me you're creating quite a bit out of this conflict that seems to be the normal relationship between counsel and an insurance company. Well, so just to clarify, there's no insurance company here. It was the plan administrator. It was a self-funded employer plan. Right. But it's similar, as Judge Fletcher noted, to counsel with insurance companies. It is. Yes. But the law guarantees plan participants is reviewed by a neutral fiduciary. And I would just say that litigation counsel, opposing counsel, is the opposite of neutral. They are expressly advocating. But that assumes that they made the decision. And we have evidence that says they did not. She says she made the decision. And for you to get to de novo review, you have to show that things happen that were so outside the norm that the plan administrator did not exercise her discretion. That's what we need to know. And how is it this, you know, what you're making argument about conflicts, et cetera, which seem to exist continually in relationships between attorneys and clients, how does that remove the administrator's discretion? Well, I mean, our position is that it is wholly out of the ordinary to involve someone in the review of a claim who has that kind of other duty to another party that is involved in the matter. I mean, I have had many cases remanded. A lot of times litigation counsel recuses themselves from the review process with good reason, for this exact reason, that it taints the review process. You've also argued, though, that even if we don't look at it or direct the district court to look at it in de novo review, you still win. Yes. And I'd like to hear your argument on that. Absolutely. So this case speaks to another recurring issue in this circuit and every other one, which is how is someone going to prove that they're disabled by debilitating pain, which is really what disables Ms. Gorbacheva. She is in constant, daily, severe pain. And here, really, the evidence is as good as it can get. All of her treating physicians, which includes three orthopedic surgeons, say she's disabled. She had a thorough evaluation by a pain specialist at Stanford University who said, this person is suffering from an illness, and they're just going to have to live with the pain for the rest of their life. She's been evaluated by a physiatrist, who also thought she was disabled, and repeatedly by a chiropractor, who thought she was disabled. And it's backed up. Her accounts of pain, which she's set forth in her declaration, are backed up by objective medical evidence that establishes the existence of a disease that is known to cause pain. And in her case, it's very significant and severe. Every single vertebrae of her spine is affected by degenerative changes of some kind or another. So you're summarizing the medical evidence in somewhat general terms. And one of the factors that the district court considered to be important was the timeline, and when certain reports were written, and when the evaluation was conducted. And as you know, the district court concluded that evaluations post-July 2012 were not relevant. So what evidence is there at the time at issue, which is when the disability determination was made from 2012? What evidence is there of that period? Can you focus on that, what shows she was disabled? Absolutely. So the first thing is that the claims administrator initially approved the claim based on the medical records that were in that file starting in 2011 and continuing from August 2011 all the way to the end of July 2012. But it was conditional approvals and requested additional records, correct? Of course. And I'm not saying that binds them. I'm saying that it did. And what they found, that there was medical evidence, and that includes the MRIs, the first round of MRIs, which all predate her leaving work, that supported her account of pain and that rendered her claim credible, and they approved it for that reason. When the district court rejected Dr. Nguyen's July 2012 statement of the work status report that he filled out, sort of confirming that Ms. Gorbacheva was still disabled, it did solely on the basis that she had not been examined by him in the last month. And that's just not reasonable. This is a degenerative arthritic-type disease. I assume that the peer reviewers also hadn't examined your client, the peer reviewers. That's correct. Who the administrator relied on after the remand similarly didn't examine your client. That's absolutely correct. Whereas Dr. Nguyen did, so did Dr. Ting, so did Dr. Banks, the last orthopedic surgeon in the line there. The 2013 functional capacity evaluation occurred during the claim and appeals process before the first round of litigation, and is, again, documenting her restrictions at that time. But since they come from this degenerative disease process, one that we have actual images of, the best possible evidence we could have, images of the disease existing before those evaluations, it's reasonable to conclude that the findings on these functional capacity evaluations relate back to that disease process that we know is in place. That's just common sense. Right. Now, it's a progressive disease, but obviously it's not a light switch. Right. Exactly. But we don't know. I mean, if it's a progressive disease, it's, by definition, getting worse. If we have an evaluation of her condition in 2017, what can that tell us about her condition in 2012? We might know she had the degenerative condition, but we don't know how bad it was. Well, what we do know, though, is that there were MRIs done in 2016 which showed that her, the degenerative process had continued, but it was not significantly different. It wasn't like there had been a major change between the 2011-2012 MRIs and those 2016 MRIs. And so the functional capacity evaluation conducted, like, less than a year later, I believe, after those MRIs, is, again, speaking to what can she do with this disease in place? And the disease we know was in place back in 2012. And the other thing is, you know, she had it right under Abatey to respond to these new expert reports. And the only time we could do that is when we got them, which wasn't until after the claim was denied on remand and we weren't given an opportunity to appeal. So I think it's unfair. But the new reports were evaluating her condition in 2012. They didn't have a new IME. They weren't providing any opinions on her current condition. Is that correct? No, I don't think. I think they definitely spoke to her current condition. I mean, the core question in the case is, could she do her own job on August 1, 2012? But in order for the plan administrator to do its job properly, quite frankly, if you're evaluating this in 2016, I think it would be malfeasance not to consider the entire picture. And they did review medical records that were long after that date, which, of course, they reasonably should.  The other thing is Ms. Gorbacheva was faulted during the initial process for not seeking enough treatment. She said she couldn't pay, right? Right. That's correct. So one of the things we did on remand was because she got Medicare through Social Security, she was able to go back and start seeing doctors again. One of the reasons we submitted so much material on remand was to rebut this idea that this person who claimed to be suffering from very severe pain wasn't going to get treatment. She was. So she didn't seek treatment for a two-year period from 2012 to 2014. Five days after the district court's remand order, she seeks treatment from her prior doctor. He indicates he's not available for a month, and she doesn't seek treatment from somebody else. She waits. Is that chronology correct? More or less, but the problem is she's not a candidate for surgery. There's nothing here to do to resolve this degenerative disease. It's just going to happen. So the treatment is really just checking up and checking in. I mean, whether to credit it or not is a different question, but this physician, Dr. Keene, said there's nothing much more they can do, right? Right. That's correct. And the pain specialist said, look, all you can really do is learn to cope with the pain. There's no, like, and talked about how Ms. Gorbacheva was hopeful of finding a cure at this pain clinic, and, you know, the doctor said, no, it's just not going to happen. And if there's no further questions, I'd like to save a little time for rebuttal. Good morning. May it please the Court, my name is Joseph Torres. I represent the defendants. I wanted to pick up on some of the discussion of the questions that we were asking Mr. Keene mainly regarding the review process, and just to put a couple things in context. First off, the declarations that we're talking about are declarations that the plaintiff admitted. They didn't contest any of the facts on the second summary judgment motion, so they've admitted Ms. Hannon's statement as to what actually occurred during the review process. And I think that when you look at Ms. Hannon's declaration, it's clear that this was a much more extensive review process than plaintiff's counsel would suggest. She received the records, according to her declaration, in October of 2016. She had several meetings with her internal staff after she reviewed the file, and it wasn't until several weeks after that that she had the meeting with litigation counsel that Mr. Keene focuses on. So her declaration and the time period and the time that she expended in reviewing these materials, but before it ever got to actually preparing a decision, is much more extensive. Secondly, if you look at the actual addendum that counsel is referring to that was drafted, it largely, with one exception I'll get to in a minute, is summarizing the reports of the peer reviews. It's not as if what was drafted somehow identifies new reasons or other arguments. It is largely a summation of what Drs. Gitlow and Drs. Kalin concluded regarding their review of the records. So the accusation that there was some structural conflict or conflict of whatever kind was reflected in what was drafted. It's just not borne out by the actual summation that Ms. Hannon then reviewed and adopted as her reasoning after she had had several discussions regarding the evidence in this case. The only additional rationale that is contained in this summation, beyond a summary of what these doctors had already advised Ms. Hannon by submitting their reports, is a discussion of the Social Security Award. Well, plaintiffs don't even try and substantively challenge that on appeal, but Ms. Hannon in her declaration said I needed to understand and I needed assistance to understand how to reconcile what the Social Security Administration did and what the doctors were recommending here. Is the only counsel available to her litigation counsel? Because it does strike me as odd and a little bit troublesome that the litigation counsel is the one advising her, rather than a lawyer who is legally sophisticated, but in the same position as she is in terms of fiduciary obligations. Understood, Your Honor. Certainly there was other counsel that could have been involved in this case, but again ---- And why did she not go to that counsel? I don't have anything in the record that would tell us one way or the other as to why Ms. Hannon opted to confer with the individual who was advising her. Can you tell us, is there a custom your client has in terms of what counsel has consulted when counsel is consulted? Well, in the earlier versions of this case, Your Honor, the record was that she was being advised by internal counsel. But I would submit to you, Your Honor ---- That strikes me as the better way to go. Understood, Your Honor. But again, this idea that counsel is incapable of sort of advising a client regarding what legal standards are or what records reflect, I'm not sure respectfully that the litigation counsel or internal counsel is any less conflicted, if that's the word to use regarding advising the client what's already been recommended by the peer reviews. They all recommended that ---- Let me ask a question that's quite directly responsive to the argument we heard. Does litigation counsel have the same fiduciary obligation as the claims administrator does? Well, they certainly can, Your Honor. I didn't ask can. Do they have the same fiduciary ---- Does litigation counsel have the same fiduciary obligation? When acting as litigation counsel, the answer would be no. Okay. But that's not how litigation counsel ---- The idea that litigation counsel always acts in an adversarial context is ---- No, that was not my question.  I got it. Thank you, Your Honor. Turning to the second point, Mr. Kienle was talking about sort of the question of what the relative weight of this evidence would show regarding her condition. And it is correct that the relevant time period to be looking at that is a 2012 time period. And if you look at that time period, if you look at the record evidence that actually existed, again, it does not reflect this idea that counsel would suggest that she was having ongoing treatment that reflected a condition that would support a finding of disability. She saw Dr. Nguyen with her last visit occurring in May of 2012, and he gave her a return-to-work date in three months. Dr. King's last visit with her was in November of 2011. Dr. Weinberg last saw her in May of 2012, suggesting a one-month follow-up. Dr. King last saw her in February of 2012, and he gave her an April 20 return-to-work date. The pain specialist that counsel referred to saw her in March of 2012, and there is no indication of any follow-up appointments being scheduled. You don't have any further treatment of Ms. Gorbacheva after May of 2012 and to the end of that year. You have an FCE in 2013, and then you have no further treatments until 2014. So focusing on the 2012 time period, I don't think it's accurate to say that the record sort of reflects only one possible outcome, which is that she was disabled. There is conflicting record evidence when you look at what these doctors concluded, both in terms of her condition and possible return-to-work dates, along with the fact that there was an independent medical examination that actually occurred as well during that same 2012 time period. So to the extent that that is, and we believe it is the relevant time period for when the condition is to be assessed, we don't think that the record is, as counsel suggests, sort of overwhelmingly demonstrating that she possessed a condition that rendered her disabled. We think, in fact, just as the district court properly found, there was conflicting evidence in the record. And the case law in this circuit is clear. If there is evidence in the record that would suggest a conclusion different than what the plan administrator reached, that is not in and of itself a demonstration that an abuse of discretion occurred, especially when, as in this case, there was conflicting evidence that would support both outcomes. Again, counsel did not make any effort on appeal to really come to grips with what the district court concluded regarding the scope of the record in this case. Instead, he continues to just focus on those snippets of the record that he believes supports his position that his client was disabled. But I would respectfully suggest, as the district court properly concluded, when you look at all of that evidence and the conflicting evidence on both sides of the scale, it was not an abuse of discretion for the administrator to reach the conclusion that this individual was capable of performing a sedentary position and that the evidence was sufficiently ambiguous, as the district court put it, that it was not unreasonable, because that is a standard here, whether or not the plan administrator made a reasonable decision based upon the record. There is no, I think, reasonable argument that that conflicting evidence necessarily supported the conclusion that Ms. Goracheva was disabled under the plan terms. Mr. Keenly also mentions this opportunity, or lack of opportunity, to respond to the peer reviews that occurred during the remand process. And again, if you look at the actual reports that were generated, they're looking back at the evidence that had already been submitted. So again, it's not as if these individuals were generating new rationales based upon new evidence. These individuals were doing what the district court had instructed the plan administrator to do, go back, review the evidence along with this functional capacity evaluation, look at the Social Security Award, and include that as part of your review. So the doctors, Kalin and Dr. Gitlow, were not out there looking at new rationales. They were commenting on the evidence that had already been submitted from the relevant time period. And so this idea that the plaintiff was somehow prevented from presenting evidence is simply not bore out by the record. Not only did they focus their analysis on the records from 2013 and 2012, but plaintiffs did submit 800 additional pages of evidence. They were not limited in what they could elect to submit on remand by anything. We said, whatever you want to submit, you can submit. So I don't think it's fair to say that simply because these reports were generated at the last step of this process, that somehow they contained something that sandbagged the plaintiffs here. The regulations do not, the regulations in effect at the time, as we pointed out in our appellate brief, did not require there to be some additional review or opportunity for a claimant to respond to the records. Those regulations have been amended so that they're now required to do that. So I think it's relevant at the time period. It wasn't anything procedurally improper by having these doctors review the records. In fact, that's what we had been instructed to do by the district court. And it would have been an abuse of discretion, in my opinion, if the plaintiff administrator had simply conducted her own review without seeking any advice from medical professionals. And again, the ERISA regulations require administrators, as necessary, to consult with medical professionals. So I don't think there's anything in the record that would actually support this idea that they were prevented from submitting the type of evidence that they wanted to. I just wanted to spend a few minutes on our cross-appeal for fees. I think our arguments are fairly well stated in our briefs, but I just wanted to make a few points. I think you can sort of boil down our position here to sort of two principal criticisms of what the district court did. The first one is that the district court did not substantively consider the fact that the defendant had offered a voluntary remand to plaintiffs in evaluating the level of success that they accomplished by obtaining that remand. The evidence is that they refused to discuss the remand simply because there was not going to be an accompanying award of benefits, and then the district court used that as a basis for saying, well, these discussions were very preliminary, and so I'm not going to factor that into a consideration as to what level of success on the merits occurred here. And again, we think that that's not proper. They were certainly free to refuse to discuss a remand, but I don't think they can turn around and then point to that remand as the success on the merits that justifies a fee award when they had been offered a voluntary remand. Can you comment a little bit more about what precisely occurred in those discussions? The district court seemed to think it was preliminary, there's not a lot of information there. Had defendants affirmatively offered to the plaintiffs a remand? Was that communicated to them in writing or some other fashion? I believe the record has an e-mail from myself to Mr. Kienle offering a remand. Mr. Kienle responds and says something to the end. I don't remember exactly, but Mr. Kienle's response e-mail is also in the record where he indicates that his client would only consider a remand if there had been an award of benefits. Now, what they ultimately obtained in the remand order, was it any better than what you offered? I would say it's not, Your Honor. We were offering to consult. So the district court order that we consider the functional capacity evaluation and the Social Security award, that's what prompted the remand. So I don't believe that what we were offering, which was an opportunity for those documents to be considered, is any different from what they obtained on the remand. The only difference would be, Your Honor, is that they asked that there be an award of benefits pending for the review. They asked the district court that also, and he denied that relief. So I don't believe they got anything out of the briefing before the district court that was any different from what we had been offering on the remand. Now, again, in fairness, the parties had this exchange, and they were not interested in what we were proposing, and so there admittedly was not a lot of discussion. But the question here is whether what they achieved was success on the merits in the context of this case. I'm not disagreeing that there are cases that certainly recognize that obtaining a remand can, under certain circumstances, constitute sufficient success on the merits that a plaintiff would be entitled to fees simply for obtaining that remand. But we think you have to put what happened here into the context of this case and look at the remand in the context of what actually was proposed. And the fact that they had never sought a remand in their complaint initially, they simply sought benefits, and we don't think that what they obtained was anything different than had been offered based upon what the record in the case reflects. The only other point I'll make has to do with the 10% reduction. Again, I think we've shown in the cases that the district court simply announcing that there's going to be a 10% reduction in fees without any further elaboration, we don't believe actually comports with this court's requirements, that the district court, if they're going to adopt a percentage reduction, explain in some detail why it is it's 10% versus 15% versus 5%. All the district court did here in reducing the fees was simply summarize what had happened in the case, that there were multiple claims, those claims were all resolved in favor of defendants, and then simply announces that there's going to be a 10% reduction in fees. We just don't believe that that's consistent with what this court requires by way of rationale. Otherwise, there really is nothing to review other than the simple declaration that this looks like this warrants a 10% reduction, and we don't think that's what this court's precedent requires. Unless there's any other questions, I thank you for your time. Okay, thank you. Mr. Kinley? Could you address this remand question? Absolutely. First of all, this was an offer that was relayed verbally over the phone initially by counsel to me. It was very early in the litigation, and there was absolutely no substance whatsoever, like what would this remand look like, how long would it take, what would be reviewed. None of that was discussed at all. The district court was right to find that it was just a preliminary conversation. Now, I confess I don't have them in front of me. Your opposing counsel just mentioned e-mails. There were some e-mail follow-ups in which we said, well, we would like some benefits if we're going to agree to do this, because what they're asking us to do is give up our case that we had done two appeals to get to, and finally we're in court, they're asking us to give that up. And I'd also point out – But in the e-mail is the nature of the remand that they're offering spelled out. I mean, they're remands and they're remands. So how clear was the remand – how clear was the type of remand that they were offering? It was no clearer than simply saying we would agree to a voluntary remand. I mean, there was literally no detail attached to it. So they didn't say remand to consider Social Security that had not previously been considered. Right. So the order you got was not spelled out in the offer. That's quite correct. And the order was an express finding that they had abused their discretion, which is different from them just voluntarily doing this. And finally, I'd point out they could have done that at any time. There was nothing stopping the plan administrator from reviewing these documents during the litigation and writing down her views and presenting them to the court. Instead, they fought it. They said we did a good job. They did discovery. They did a motion trying to win the case, and they lost. They took that risk. And we litigated the case and we prevailed at that level. How do you respond to their argument that you actively litigated against a remand, that that's not what you wanted? You wanted an award of benefits at the district court and that you were not seeking a remand and, in fact, what you received was not what you were looking for? I was seeking a finding that the administrator abused his discretion and whatever relief we could get for that. Yes, I would have liked to get benefits, and I think they should have been awarded. But a remand is a common remedy. Funny thing, you were asking for benefits, of course. A remand is a very common remedy for a finding of abuse. It's different to say we want benefits. Of course, you're saying that. But if you're actively opposing a remand, that's also different. Did you oppose a remand in the district court? As I understand the briefs, they say that you did. I asked principally for benefits to be awarded, but I do believe in the briefs on summary judgment that first time around, and it was a long time ago, we said that the alternative relief for an abuse of discretion would be to remand to the plaintiff administrator with instructions to do what they're supposed to do in the first place, which is what this Court has said in SAFL, VCR Pacific. That's sort of the leading case on this issue, that when you find an abuse of discretion, usually you're going to remand to the plaintiff administrator to do what they should have done in the first instance. So we were not at all opposed to a remand as a remedy. It was better than nothing. Obviously, we're here to get the benefits paid, though. I want to pursue Judge Beatty's question as precisely as I can. You obviously were seeking benefits, and you obviously preferred benefits over remand. What precisely did you say with respect to remand? Like you didn't want one or that you preferred benefits and you would accept remand if that was all you were going to get? The exact remedy we would have wanted is benefits and a remand going forward. What we got was a remand only to review those documents that hadn't been considered. We were not opposed to that at all. We considered that a successful outcome in the case. Finally, just in wrapping up here, I just wanted to, going back to the merits of the claim, come back to a case this court decided called Safon v. Wells Fargo. And it's a case that is remarkably similar facts because it's another back degenerative disc disease case. And one of the things the court observed in that case was that when one of these claims has been approved, which this one was, and paid for a period of time, which this one was, the court expects the plaintiff administrator to be able to identify some evidence of improvement to warrant subsequently terminating the claim. And that's the bucket we're in here. But there was no evidence of improvement, and for that reason we think that benefits should have never been cut off in the first place and that they should be restored now. Thank you, Your Honors. Thank you. Thank both sides for your helpful arguments. The case of Gorbacheva v. Abbott Labs Extended Disability Plan submitted, and we're now in adjournment until tomorrow.
judges: W. Fletcher, Bennet, Bade